IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JONATHAN PIERRE, | Civil No. 3:17-cv-1507 |
| Petitioner | (Judge Mariani) |
| v. | |
| CLAIR DOLL, WARDEN, | |
| Respondent | |

### **MEMORANDUM**

Presently pending before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by Petitioner Jonathan Pierre ("Petitioner"). (Doc. 1). Petitioner challenges the constitutionality of his prolonged detention by the United States Immigration and Customs Enforcement ("ICE"). (*Id.*). In response, Respondent contends that Petitioner is an "arriving alien" who is lawfully detained under 8 U.S.C. § 1225(b) and is not entitled to release or a bond hearing. (Doc. 6). For the reasons set forth below, the Court will grant in part Petitioner's writ of habeas corpus.

I.  **Background**

Petitioner is a citizen and national of Haiti. (Doc. 6-1, pp. 3-5, Record of Deportable/Inadmissible Alien). On November 6, 2016, Petitioner applied for admission to the United States at the San Ysidro, California, port of entry, and was apprehended by agents of the United States Customs and Border Protection. (*Id.*). He had no valid immigration documents and immigration officials found Petitioner to be inadmissible pursuant to section

212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). (*Id.*; Doc. 6-1, p. 8). Petitioner was taken into ICE custody pending his removal. (*Id.*; Doc. 6-1, p. 8). When interviewed by Customs and Border Protection Agents, Petition stated that "he would not be harmed if he is returned to his country of citizenship" and that "he has no fears and concerns of being removed from the U.S. and being returned to his country of citizenship." (Doc. 6-1, p. 4). On November 7, 2016, an expedited order of removal was issued. (Doc. 6-1, p. 8).

Petitioner subsequently applied for asylum. (*See* Doc. 6-1, p. 12). On May 1, 2017, an immigration judge denied Petitioner's applications for asylum, withholding of removal, and withholding of removal under Article III of the Convention Against Torture Act, and ordered Petitioner removed from the United States. (Doc. 6-1, p. 12). Petitioner appealed to the Board of Immigration Appeals ("BIA"). (*See* Doc. 6-1, p. 13). On June 29, 2017, the BIA ordered that the record be returned to the Immigration Court as the audio recording of the removal proceedings was missing. (Doc. 6-1, p. 14). On August 16, 2017, the Immigration Court resolved the issue regarding the audio recording, and returned the case to the BIA for adjudication. (Doc. 6-1, p. 15).

On January 18, 2018, the BIA again returned the case to the Immigration Court. (Doc. 11, pp. 3-4; Doc. 12, pp. 3-4). On May 30, 2018, an immigration judge denied Petitioner's applications for asylum, withholding of removal, and withholding of removal

2

under Article III of the Convention Against Torture, and ordered him removed from the United States. (*Id.*). On June 18, 2018, Petitioner appealed this decision to the BIA, where it remains pending. (*Id.*).

On June 12, 2017 and February 27, 2018, Petitioner requested parole pending the resolution of his immigration proceedings. (Doc. 11, p. 4; Doc. 12, p. 7). ICE denied each request for parole. (*Id.*).

On July 28, 2018, Petitioner again requested parole pending the resolution of his immigration proceedings. (Doc. 12, pp. 29-30). On July 31, 2018, ICE conducted an interview and determined that parole was not appropriate. (*Id.* at pp. 32-35). In rendering this decision, ICE determined that Petitioner did not establish that he is not a flight risk, he did not establish that he has substantial ties to the community, and imposition of bond or other parole conditions would not ensure his appearance at required immigration hearings pending the outcome of his case. (*Id.* at p. 34).

## II. <u>Discussion</u>

8 U.S.C. § 1225(b) governs the detention of "aliens arriving in the United States," and mandates the detention of "arriving aliens" who, like Petitioner, do not possess valid entry or travel documents when they arrive. *See Ahmed v. Lowe*, 2017 WL 2374078 (M.D. Pa. May 31, 2017) (finding that because petitioner was classified as an "arriving alien," his detention is controlled by § 1225(b)). Section 1225(b) provides that arriving aliens are

3

inspected immediately upon arrival in the United States by an officer of the United States Customs and Border Protection. If the immigration officer determines that the alien is inadmissible because the alien cannot produce valid entry documents, *see* 8 U.S.C. § 1182(a)(7), "the officer shall order the alien removed from the United States without further hearing or review." 8 C.F.R. § 1235.3(b)(1)(I), (b)(2)(ii) (providing that arriving aliens subject to expedited removal are not entitled to a hearing or appeal of this decision).

If, however, the alien "indicates an intention to apply for asylum . . . or a fear of persecution, the officer shall refer the alien for an interview by an asylum officer." 8 U.S.C. § 1225(b)(1)(A)(ii); *see* 8 C.F.R. § 235.3(b)(4) ("If an alien subject to the expedited removal provisions indicates an intention to apply for asylum, or expresses a fear of persecution or torture, or a fear of return to his or her country, the inspecting officer shall not proceed further with removal of the alien until the alien has been referred for an interview by an asylum officer.").

Should the asylum officer determine that the alien has a credible fear of persecution, the alien "shall be detained for further consideration of the application for asylum." 8 U.S.C. §1225(b)(1)(B)(ii). If the alien receives a positive credible fear determination, the alien will be placed in removal proceedings. 8 C.F.R. § 235.6(a)(1)(ii). The alien, however, remains detained pursuant to 8 U.S.C. § 1225(b) during the pendency of these proceedings. The only statute which permits an alien's release from § 1225(b) custody is 8 U.S.C. §

1182(d)(5)(A), pursuant to which an alien may be paroled into the United States if the Attorney General determines "on a case-by-case basis" that "urgent humanitarian reasons or significant public benefit" warrant the alien's release. 8 U.S.C. § 1182(d)(5)(A). Decisions under § 1182 are purely discretionary and the regulations prevent an immigration judge from "redetermin[ing] conditions of custody" with respect to certain classes of aliens, including "[a]rriving aliens in removal proceedings, including aliens paroled after arrival pursuant to section 212(d)(5) of the Act." 8 C.F.R. § 1003.19(h)(2)(i)(B).

As stated above, Petitioner presented himself for admission to the United States at the San Ysidro, California, port of entry, and was immediately detained and classified as an "arriving alien." *See* 8 C.F.R. § 1001.1(q) ("The term arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry."). Because Petitioner was never admitted into the United States, he is an inadmissible arriving alien and his detention is controlled by 8 U.S.C. § 1225(b). To the extent that Petitioner argues that he is statutorily entitled to periodic bond hearings under § 1225(b), a recent United States Supreme Court decision squarely rejected such a reading of the statute. *See Jennings v. Rodriguez*, --- U.S. ---, 138 S. Ct. 830 (Feb. 27, 2018).

In *Jennings*, the Supreme Court reversed the Ninth Circuit's holding that non-citizens detained under §§ 1225(b)(1), (b)(2), and 1226(c) are entitled to bond hearings every six months. *Jennings*, 138 S. Ct. at 842. The Court provided:

> § 1225(b) applies primarily to aliens seeking entry into the United States ("applicants for admission" in the language of the statute). Section 1225(b) divides these applicants into two categories. First, certain aliens claiming a credible fear of persecution under § 1225(b)(1) "shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). Second, aliens falling within the scope of § 1225(b)(2) "shall be detained for a [removal] proceeding." § 1225(b)(2)(A).
>
> Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for "further consideration of the application for asylum," and § 1225(b)(2) aliens are in turn detained for "[removal] proceeding[s]." Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.

*Id.* at 842. Accordingly, the *Jennings* Court concluded that both §§ 1225(b)(1) and (b)(2) "mandate detention until a certain point and authorize release prior to that point only under limited circumstances. As a result, neither provision can reasonably be read to limit detention to six months." *Id.* at 844.

It is clear that Petitioner's most recent appeal of the denial of this application for asylum is currently pending before the BIA, and he is subject to mandatory detention. *See Jennings*, 138 S. Ct. at 844 ("Section 1225(b)(1) mandates detention 'for further consideration of the application for asylum,' § 1225(b)(1)(B)(ii), and § 1225(b)(2) requires detention 'for a [removal] proceeding,' § 1225(b)(2)(A). The plain meaning of those phrases is that detention must continue until immigration officers have finished 'consider[ing]' the application for asylum, § 1225(b)(1)(B)(ii), or until removal proceedings have concluded, §

6

1225(b)(2)(A)."). Thus, based upon the Supreme Court's holding in *Jennings*, this Court must conclude that Petitioner's detention under 8 U.S.C. § 1225(b) does not statutorily entitle him to a bond hearing pending his asylum proceedings. *See id.* at 842.

However, the Supreme Court in *Jennings* did not determine whether arriving aliens facing prolonged detention are entitled to bond hearings as a matter of constitutional Due Process.[1] *See Jennings*, 138 S.Ct. at 851; *see also Otis V. v. Green*, 2018 WL 3302997, *6 (D. N.J. July 5, 2018) ("Although *Jennings* abrogated the holdings of this and other courts finding an implicit reasonable time limitation on § 1225(b) detention, *Jennings* did not address . . . [whether] those detained under the statute, as applicants for admission, possess some rights under the Due Process Clause which may be impugned should detention under the statute become unduly and unreasonably prolonged."). Indeed, neither the Supreme Court nor the Third Circuit has addressed whether due process requires a detainee, being held pursuant to § 1225(b), to receive a bond hearing following a certain period of detention, and this Constitutional issue remains expressly undecided.

Both the Supreme Court and the Third Circuit have, however, analyzed the

---

[1] The Supreme Court remanded the case to the Ninth Circuit for consideration of the parties' constitutional arguments "in the first instance." *Jennings*, 138 S.Ct. at 851. On April 12, 2018, the Ninth Circuit ordered the parties to address various constitutional questions, including: "whether the Constitution requires that aliens seeking admission to the United States who are subject to mandatory detention under 8 U.S.C. § 1225(b) must be afforded bond hearings, with the possibility of release into the United States, if detention lasts more than six months[.]" *Rodriguez v. Jennings*, 887 F.3d 954, 956 (9th Cir. 2018). The Ninth Circuit has not yet issued a decision.

7

constitutionality of detaining criminal aliens pursuant to 8 U.S.C. § 1226(c), which mandates pre-removal order detention for aliens convicted of certain offenses. In analyzing 8 U.S.C. § 1226(c), the Supreme Court held that detention without the possibility of bond for "the limited period of [ ] removal proceedings" is constitutional. *Demore v. Kim*, 538 U.S. 510, 530-31 (2003). Section 1226(c), like § 1225(b)(2)(A), provides that the Government shall take into custody those removable aliens who have been convicted of certain crimes, and does not provide for a bond hearing once those aliens have been detained. The *Demore* Court noted that aliens, including those in pre-removal confinement, are nonetheless protected by constitutional due process. *See id.* at 523 ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.") (citation omitted).

Following *Demore*, the Third Circuit found that § 1226(c) detention may raise constitutional concerns if detention becomes unreasonably prolonged. *See Diop v. ICE/Homeland Security*, 656 F.3d 221, 223, 232 (3d Cir. 2011). Although mandatory detention for some classes of aliens under § 1226(c) is constitutional, Justice Kennedy's concurring opinion in *Demore* emphasizes that continued detention can become unconstitutional unless the government justifies its actions at a hearing designed to ascertain whether continued detention of the alien is necessary to achieve the law's stated purposes of preventing flight and minimizing potential dangers to the community. *Diop*, 656

F.3d at 233. Where detention has become unreasonable, "the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." *Id.*

In *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469 (3d Cir. 2015), the Third Circuit further examined excessive detention claims under § 1226(c) in a pre-removal context. The Third Circuit held that in cases where a petitioner brings a good faith challenge to his or her removal from the United States:

> beginning sometime after the six-month time frame considered by *Demore*, and certainly by the time [the alien] had been detained for one year, the burdens to [the petitioner's] liberties outweigh[ ] any justification for using presumptions to detain him without bond to further the goals of the statute. . . . [T]he underlying goals of the statute would not have been, and will not now be undermined by requiring the Government to produce individualized evidence that [the petitioner's] continued detention was or is necessary.

*Chavez-Alvarez*, 783 F.3d at 478.

Post *Jennings*, several district courts have considered whether arriving aliens detained under § 1225(b) have a due process right to avoid unreasonably prolonged detention. *See, e.g., Destine v. Doll*, 2018 WL 3584695 (M.D. Pa. July 26, 2018) (finding that arriving aliens have Due Process rights and that petitioner's twenty-one month detention pursuant to § 1225(b) was unreasonable, and ordering an individualized bond hearing); *Fatule-Roque v. Lowe*, 2018 WL 3584696, at *6 (M.D. Pa. July 26, 2018) (finding that § 1225(b) detainees enjoy basic due process rights, but finding that petitioner's

9

detention was not so unduly prolonged that it rendered § 1225(b) unconstitutional as applied to him); *Lett v. Decker*, 2018 WL 4931544 (S.D.N.Y. Oct. 10, 2018) (finding that arriving aliens have Due Process rights and that petitioner's nearly ten month detention pursuant to § 1225(b) was unreasonable, and ordering an individualized bond hearing); *Perez v. Decker*, 2018 WL 3991497 (S.D.NY. Aug. 20, 2018) (finding that arriving aliens have Due Process rights and that petitioner's nearly one year detention pursuant to § 1225(b) was unreasonable, and ordering an individualized bond hearing).

In the instant action, the Court agrees with the weight of authority finding that "arriving aliens detained pre-removal pursuant to § 1225(b) have a due process right to an individualized bond consideration once it is determined that the duration of their detention has become unreasonable." *Singh v. Sabol*, 2017 WL 1659029, *4 (M.D. Pa. Apr. 6, 2017) (citation omitted), *report and recommendation adopted by*, 2017 WL 1541847 (M.D. Pa. Apr. 28, 2107); *see also Otis V.*, 2018 WL 3302997 at *6-8. The Court thus finds that Petitioner has some procedural due process rights as an arriving alien held pursuant to § 1225(b). *See Castro v. U.S. Dep't of Homeland Security*, 835 F.3d 422, 449 n. 32 (3d Cir. 2016) ("We doubt . . . that Congress could authorize, or that the Executive could engage in, the indefinite, hearingless detention of an alien simply because the alien was apprehended shortly after clandestine entrance."). Given the particular circumstances presented here, namely Petitioner's prolonged two-year detention, the Court finds that Petitioner's continued

detention without a bond hearing has become unreasonable. Therefore, Petitioner's detention requires an individualized bond hearing, governed by the procedures provided to aliens in discretionary detention under 8 U.S.C. § 1226(a). *See Diop*, 656 F.3d at 235 ("[s]hould the length of [the petitioner's] detention become unreasonable, the Government must justify its continued authority to detain him at a hearing at which it bears the burden of proof.").

## III. Conclusion

For the foregoing reasons, the Court will grant in part the petition for writ of habeas corpus insofar as it seeks an individualized bond hearing before an immigration judge.

A separate Order shall issue.

Dated: October 26, 2018

Robert D. Mariani
United States District Judge